OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
The application by petitioners for an order pursuant to CPLR article 78, directing respondents to provide petitioners with records responsive to its September 21, 2011 letter request in accordance with New York’s Freedom of Information Law (FOIL) as codified in Public Officers Law §§ 84-90, or in the alterna *474 tive, for an in camera review of randomly selected responsive records, is denied in its entirety.
Petitioners seek to expand on a series of investigative articles published by the Associated Press* alleging that respondent New York Police Department (NYPD) worked with the Central Intelligence Agency (CIA) to conduct a covert, domestic surveillance program that targeted Muslim individuals, inter alla, located inside and outside of New York City. The articles allege racial profiling and civil rights violations by respondents.
On September 21, 2011, petitioners, together with the Brennan Center for Justice at New York University Law School (a nonparty to this action), submitted a FOIL request seeking information regarding record keeping and retention, policy guidelines and statistics pertaining to respondent NYPD’s surveillance of Muslim individuals, businesses, and organizations throughout New York City and surrounding areas. The FOIL request consisted of four broad categories of records and 26 subcategories of records. In the instant proceeding, petitioners request that the court only consider the subcategories of records numbered 12-13 and 16-26.
In a letter dated March 5, 2012, respondent NYPD denied the FOIL request on the grounds that (1) the requested records were not reasonably described; (2) the disclosure of the requested records would result in an unwarranted invasion of privacy; (3) the sought records were exempt pursuant to the law enforcement, public safety, and information technology assets and infrastructures exemptions; (4) the sought records were exempt pursuant to the inter- and intra-agency materials exemptions; and (5) the records were exempt under state and federal statute. Responsive records were turned over to petitioners pertaining to Administrative Guide procedure 322-27, issued June 1, 2005 (two pages); Operations Order No. 7, issued January 29, 2007 (six pages); and Patrol Guide procedure 212-72, issued December 28, 2004 (18 pages).
In a letter dated April 4, 2012, petitioners appealed the March 5, 2012 denial. Petitioners argued, inter alia, that FOIL required the NYPD to offer more than a bare recitation of the statutory exemptions in denying a FOIL request and that respondent NYPD should provide redacted records. In a letter dated May 18, 2012, respondent NYPD denied the appeal, elaborating on the reasons for the denial and applying the FOIL statute to the instant request.
*475 Petitioners argue that (1) FOIL establishes a broad right of public access to agency records, including NYPD records; (2) the NYPD improperly denied the request in its entirety; (3) the requested records are not subject to complete nondisclosure under the law enforcement, privacy, public safety, or inter-agency exemptions; and (4) petitioners reasonably described all records. Respondents oppose petitioners’ application and argue that the requested records were properly exempted from disclosure; the court should defer to respondents’ law enforcement expertise; and petitioners did not reasonably describe all records. In reply, petitioners argue that respondents seek a blanket exemption that is not subject to judicial review, is unprecedented, and is unwarranted, and that respondents must perform a search for responsive records.
“The statutorily stated policy behind FOIL is to promote [the] people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations.” (Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564 [1984] [internal quotation marks omitted]; see Public Officers Law § 84.) FOIL is to be “liberally construed,” and its exemptions are to be “narrowly interpreted.” (Matter of Newsday, Inc. v Sise, 71 NY2d 146, 150 [1987]; Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252 [1987].) “The legislature in recognizing the need to keep certain matters confidential, carved out . . . statutory instances when, if the governmental agency so demonstrates, information will not be subject to disclosure under FOIL.” (Matter of Rodriguez v Johnson, 17 Misc 3d 1120[A], 2007 NY Slip Op 52086[U], *3 [Oct. 23, 2007]; Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75 [1984]; Matter of Fink v Lefkowitz, 47 NY2d 567 [1979]; Matter of Johnson v New York City Police Dept., 257 AD2d 343 [1st Dept 1999].) “While FOIL exemptions are to be narrowly read, they must of course ‘be given their natural and obvious meaning where such interpretation is consistent with the legislative intent and with the general purpose and manifest policy underlying FOIL.’ ” (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 NY2d 106, 110 [1992], citing Matter of Federation of N.Y. State Rifle & Pistol Clubs v New York City Police Dept., 73 NY2d 92, 96 [1989].)
Respondents properly denied access to records responsive to requests numbered 12-13 and 16-26 as the records or portions thereof were “compiled for law enforcement purposes and *476 which, if disclosed, would: i. interfere with law enforcement investigations or judicial proceedings; [or] . . . iii. identify a confidential source or disclose confidential information relating to a criminal investigation; or iv. reveal criminal investigative techniques or procedures . . . .” (See Public Officers Law § 87 [2] [e] [i], [iii], [iv].)
Records compiled for law enforcement purposes may be withheld if “disclosure . . . while a case is pending would generally interfere with enforcement proceedings.” (Matter of Lesher v Hynes, 19 NY3d 57, 67 [2012] [internal quotation marks omitted].) It is the agency’s burden to “articulate a factual basis for the exemption” by identifying “generic kinds of documents for which the exemption is claimed, and the generic risks posed by disclosure of these categories of documents.” (Id.; see Public Officers Law § 89 [4].) It is not necessary to “detail the manner in which each document sought would cause such interference” because “the assertion that disclosure would interfere with an ongoing law enforcement investigation [is] a sufficiently particularized justification for the denial of access to [the] records.” (Matter of Lesher v Hynes, 80 AD3d 611, 613 [2d Dept 2011]; see also Matter of Pittari v Pirro, 258 AD2d 202, 206 [2d Dept 1999] [whereby “a generic determination could be made that disclosure under FOIL would cause interference”]; Matter of Whitley v New York County Dist. Attorney’s Off., 101 AD3d 455 [1st Dept 2012] [rejecting argument that respondents were required to set forth particularized findings about whether an exemption applied to each responsive document].)
Respondents have met their burden in identifying generic documents for which the law enforcement exemption is claimed. Respondents identified raw, unevaluated field reports, derivative reports, intermediate reports, and end user reports that were compiled for law enforcement purposes that are exempt from disclosure. (Cohen affirmation 1i 23.) These highly detailed and factual reports tend to be both “source and methods revealing” documents. (Cohen affirmation 1111 25-28.) Respondents also met their burden by describing generic risks posed by disclosure, including identification of sources, disclosure of the size and capabilities of the NYPD undercover program, and disclosure of the tradecraft, policies, modes of operation, and methods used by the NYPD. (Cohen affirmation 1i 25.) Given the high level of detail in these reports, “it makes it relatively easy to connect strands of information, which in turn, provides a factual basis from which the identity of sources, methods, and capabilities can be determined.” (Cohen affirmation UH 26-27.)
*477 Although petitioners argue that the law enforcement exemption does not apply to completed investigations, disclosure may be withheld provided that there exists an “unusual circumstance,” including the prospect that disclosure might compromise a related case. (Lesher, 19 NY3d at 68.) Even a document that relates to “prospective police activity” may be withheld, as the document “may provide a basis for further investigation along lines of inquiry not heretofore pursued.” (Council of Regulated Adult Liq. Licensees v City of N.Y. Police Dept., 300 AD2d 17, 18 [1st Dept 2002]; Matter of DeLuca v New York City Police Dept., 261 AD2d 140, 141 [1st Dept 1999].) Even though counterterrorism and other intelligence activities do not culminate in prosecutions, these investigations, nonetheless, should be exempt as respondents’ current and past investigations provide the NYPD with a “basis for further investigation along lines of inquiry not heretofore pursued.” (DeLuca, 261 AD2d at 141.)
“FOIL’S Interference Exemption protects all types of judicial proceedings from the interference that would result from the premature disclosure of law enforcement records. . . . The exemption does not specify a particular type of judicial proceeding or any particular phase within a judicial proceeding.” (Matter of Campbell v New York City Police Dept., 2012 NY Slip Op 30145[U], *4 [Sup Ct, NY County 2012]; see Public Officers Law § 87 [2] [e] [i].) Notwithstanding the fact that the requested documents would interfere with a pending discovery dispute in Handschu v Police Dept. of City of N.Y. (2012 WL 5939058, 2012 US Dist LEXIS 169255 [SD NY, Nov. 26, 2012, No. 71 Civ. 2203 CSH]), the documents are also exempt pursuant to the law enforcement exception.
Responsive records that would identify a confidential source or disclose confidential information relating to a criminal investigation are exempt from disclosure. (See Public Officers Law § 87 [2] [e] [iii].) This court is satisfied that respondents have demonstrated that the raw, unevaluated field reports, derivative reports, and intermediate reports contain not only highly detailed information, but also contain source revealing information that could potentially jeopardize the effectiveness of NYPD’s undercover programs. Respondents claim that disclosure of the requested documents would easily reveal the identity of undercover officers and informants, and would debilitate NYPD’s undercover program. (Cohen affirmation 1111 6-7.) The resulting harm would be NYPD’s inability to protect the *478 identities of undercover officers and informants, the hindrance of recruitment and retention of investigative sources, and the “chilling effect” upon the public’s willingness to report leads or other information of investigative value. (Id. ¶¶ 7, 41-42, 67; see Matter of Johnson v New York City Police Dept., 257 AD2d 343, 349 [1st Dept 1999], lv dismissed 94 NY2d 791 [1999].)
Responsive records that “would . . . reveal criminal investigative techniques or procedures, except routine techniques and procedures” are exempt from disclosure pursuant to Public Officers Law § 87 (2) (e) (iv).
“The purpose of this exemption is obvious. Effective law enforcement demands that violators of the law not be apprised of the nonroutine procedures by which an agency obtains its information. However beneficial its thrust, the purpose of the Freedom of Information Law is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that information to construct a defense to impede a prosecution. . . . “Indicative, but not necessarily dispositive, of whether investigative techniques are nonroutine is whether disclosure of those procedures would give rise to a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel.” (Matter of Fink v Lefkowitz, 47 NY2d 567, 572 [1979] [citations omitted].)
Undercover operations, even though widely used and time-tested, have been adjudged non-routine. (Matter of Urban Justice Ctr. v New York Police Dept., 2010 NY Slip Op 32400[U] [Sup Ct, NY County 2010].)
Here, disclosure of the requested documents would provide “a roadmap of investigation decisions, techniques and information that could be prepared ... to undermine future investigations, . . . and . . . avoid detection, arrest, and prosecution.” (Cohen affirmation 11 36.) Even heavily redacted documents will contain “strands of information . . . [that] can still be used to decipher sources, methods, and capabilities.” (Id. 11 28.) Respondents’ intelligence gathering and counterterrorism activities “constitute detailed, specialized methods of conducting an investigation into [potential future terrorist attacks]” and therefore should be withheld pursuant to Public Officers Law § 87 (2) (e) (iv). (Fink, 47 NY2d at 573.)
*479 Any record which, if disclosed, would endanger the life or safety of any person may be exempt from disclosure. (See Public Officers Law § 87 [2] [f].) “The agency in question need only demonstrate ‘a possibility of endanger[ment]’ in order to invoke this exemption.” (Matter of Bellamy v New York City Police Dept., 87 AD3d 874, 875 [1st Dept 2011]; see also Matter of Stronza v Hoke, 148 AD2d 900, 901 [3d Dept 1989] [“(T)here need only be a possibility that such information would endanger the lives or safety of individuals”]; Rankin v Metropolitan Transp. Auth., 2010 NY Slip Op 32161[U] [Sup Ct, NY County 2010] [whereby petitioner’s FOIL request for maps and blueprints of the New York City subways was denied due to the potential devastating effect of providing access to highly sensitive material to potential terrorists].) Here, release of the requested documents could impair the lives and safety of the law enforcement community, undercover officers, confidential informants, and members of the public who cooperate with the NYPD’s investigations and anti-terrorism efforts. Accordingly, the requested records were properly withheld under the public safety exemption.
Records that, if disclosed, would constitute an unwarranted invasion of privacy under the provisions of Public Officers Law §§ 87 (2) (b) and 89 (2) are exempt from disclosure. “ ‘[A]n unwarranted invasion of personal privacy includes, but shall not be limited to’ six specific kinds of disclosure.” (Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 485 [2005].) “What constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable [person] of ordinary sensibilities .... This determination requires balancing the competing interests of public access and individual privacy.” (Matter of Dobranski v Houper, 154 AD2d 736, 737 [3d Dept 1989]; see also Matter of Scarola v Morgenthau, 246 AD2d 417, 418 [1st Dept 1998] [holding statements made by individuals alleged to be “known informants” exempt from disclosure because disclosure would, inter alla, be an unwarranted invasion of their personal privacy].) “Once it is determined that the requested material falls within a FOIL exemption, no further policy analysis is required.” (Matter of Hanig, 79 NY2d at 112.)
Respondent NYPD collects an “indeterminate amount of data . . . regardless of whether it ultimately proves to be reliable, credible, or relevant.” (Matter of Gould v New York City Police Dept., 89 NY2d 267, 277-278 [1996].) Responsive records *480 contain personal information of the individuals or entities that are the subject of investigations, as well as those individuals who are involved in the investigation as complainants or as witnesses. The disclosure that an individual or entity may have been named during the course of an investigation of possible terrorist activity or otherwise involved in the investigation could be quickly disseminated, causing harm to the reputation of such individual or entity, even though their connection to the investigation might later be determined to be purely coincidental. Releasing the documents in digital format could further heighten privacy concerns and potentially lead to exploitation by the media and misuse of data. (See New York Times Co., 4 NY3d at 486.) Accordingly, the requested records were properly withheld under the personal privacy exemption.
Inter-agency or intra-agency materials, which are not: “i. statistical or factual tabulations or data; ii. instructions to staff that affect the public; [or] iii. final agency policy or determinations” are exempt from disclosure. (Public Officers Law § 87 [2] [g].) “The point of the intra-agency exception is to permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure.” (Matter of New York Times Co. v City of N.Y. Fire Dept, 4 NY3d at 488, citing Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, 132 [1985].) Additionally, factual tabulations or data may be withheld if the records fall “under any other applicable exemption.” (Matter of Gould, 89 NY2d at 277.) Respondents have undertaken intelligence and counter-terrorism efforts in conjunction with the New York City Taxi and Limousine Commission (TLC). Documents provided by the TLC to respondents in connection with respondents’ counter-terrorism investigations or information gathering activities, and records reflecting respondents’ request for such records from the TLC were properly withheld pursuant to the inter- and intra-agency exemption.
An agency may deny access to records or portions thereof that are specifically exempted from disclosure by state or federal statute. (Public Officers Law § 87 [2] [a].) The federal Freedom of Information Act (FOIA) as codified in 5 USC § 552, which is the federal equivalent to New York’s FOIL as codified in Public Officers Law §§ 84-90, specifically exempts “inter-agency or intra:agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.” (5 USC § 552 [b] [5].) National Security Act (NSA) *481 § 102A (i) (1) provides that “[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure.” (50 USC § 403-1 [i] [1].) Accordingly, intelligence sources and methods used by the CIA are protected from disclosure. (50 USC §§ 403-3 [c] [5]; 421.) Documents covered by section 102A (i) (1) of the NS A may be properly excluded under FOIA. (New York Times Co. v United States Dept. of Justice, 915 F Supp 2d 508, 538-539 [SD NY, Jan. 3, 2013], citing 5 USC § 552 [b] [3].) Responsive records containing information regarding any “joint NYPD-CIA unit engaged in counterterrorism surveillance or information gathering,” and the “NYPD’s sharing of information about informants with the CIA or other agencies” fall squarely within both FOIL’S inter- and intra-agency exemption and federal statute exemption. Thusly, this court finds that records responsive to requests numbered 12, 13, and 20 generated by the NYPD and TLC for use by the CIA are exempt from disclosure under Public Officers Law § 87 (2) (a).
Public Officers Law § 89 (3) places the burden on petitioners to “reasonably describe” documents requested. (Matter of Konigsberg v Coughlin, 68 NY2d 245 [1986]; Mitchell v Slade, 173 AD2d 226, 227 [1st Dept 1991].) “The failure of a requester to ‘reasonably describe’ desired records ... is a ground for nondisclosure that is entirely separate from the exemption provisions under section 87 (2) of the Public Officers Law.” (Konigsberg, 68 NY2d at 251.) To support a denial because records are not reasonably described, the agency has to establish that “the descriptions [are] insufficient for purposes of locating and identifying the documents sought.” (Id. at 249.)
Petitioners’ requests numbered 16-19 and 21-23 seek information pertaining to respondents’ investigation of Muslim, Arab, and South Asian communities within and outside of New York City. Respondents have sufficiently demonstrated in their papers that a database search “would be pointless, as there is no combination of search terms that would yield the universe of responsive documents,” as the vast majority of its records are not organized along racial, religious, or ethnic classifications. (Cohen affirmation If 10.) This court finds that petitioners’ requests numbered 16-19 and 21-23 are not reasonably described. Moreover, even if some of the records, but not the vast majority, were organized along racial, religious, or ethnic classifications, these records would nonetheless be exempt from disclosure pursuant to the various exemptions under Public Officers Law § 87 (2) as discussed above.
*482 Accordingly, it is hereby, adjudged that petitioners’ application for an order, compelling respondents to produce documents requested pursuant to New York’s Freedom of Information Law codified in Public Officers Law §§ 84-90, is denied and the proceeding is dismissed, without costs and disbursements to either party.

 http://ap.org/Index/AP-In-The-News/NYPD