[992 NYS2d 870]

Talib W. Abdur-Rashid, Petitioner, v New York City Police Department et al., Respondents.

Supreme Court, New York County, September 11, 2014

## APPEARANCES OF COUNSEL

*Law Firm of Omar T. Mohammedi, LLC*, New York City (*Omar T. Mohammedi* of counsel), for petitioner.

*Zachary W. Carter, Corporation Counsel*, New York City (*Jeffrey S. Dantowitz* of counsel), for respondents.

### OPINION OF THE COURT

ALEXANDER W. HUNTER, JR., J.

The application by petitioner for an order pursuant to CPLR article 78, directing respondents to provide petitioner with records responsive to petitioner's Freedom of Information Law (FOIL) request 12-PL-106546 made pursuant to Public Officers Law § 84 *et seq.* is denied. The cross motion by respondents to dismiss the petition is granted.

This case presents an important issue of apparent first impression—whether a local New York State law enforcement agency responding to a FOIL request may refuse to confirm or deny the existence of responsive records by adopting the *Glomar* doctrine which permits federal agencies to neither confirm nor deny the existence of records requested pursuant to the Federal Freedom of Information Act (FOIA) (5 USC § 552). Petitioner asserts that he and the Mosque of Islamic Brotherhood, where he serves as Imam, are subjects of ongoing or contemplated investigative activity conducted by respondents. Accordingly, petitioner is requesting all records pertaining to respondents' surveillance of petitioner and of the Mosque of Islamic Brotherhood. In response to petitioner's request, respondents assert that, in accordance with public safety and law enforcement exemptions, it is not required to disclose which

individuals or organizations are or have been the subject of ongoing or contemplated investigative activity.

On October 23, 2012, petitioner submitted a FOIL request to respondents' FOIL unit for all records relating to any possible surveillance and/or investigation of petitioner and the Mosque of Islamic Brotherhood. The FOIL unit acknowledged petitioner's request by letter dated November 13, 2012 and subsequently sent follow-up letters to petitioner dated December 12, 2012 and February 13, 2013 informing him that additional time was required to make a determination on the request. By letter dated June 28, 2013, respondents informed petitioner that his request was denied for facial insufficiency. According to the letter, petitioner not only failed to submit a certification of identity of a requester as required under Public Officers Law §§ 87 (2) (b) and 89 (2), but also failed to include written consent to disclose records to petitioner's attorney pursuant to Public Officers Law § 89 (2) (c) (ii). The June 28, 2013 response went on to state that, regardless of the facial insufficiency of the request, the information sought by petitioner, if possessed by respondents, was exempt from FOIL disclosure pursuant to Public Officers Law §§ 87 (2) (e) (i), (iii), (iv) and (f); 87 (2) (b) and 89 (2) (b); 87 (2) (g); and 87 (2) (a).

On July 19, 2013, petitioner appealed respondents' determination by disputing the claim of facial insufficiency and maintaining that the June 28, 2013 response constituted a blanket denial which was not supported by facts or law. In a reply dated August 7, 2013, respondents denied petitioner's appeal and again claimed that the request was facially insufficient. Respondents also referred to a failure by petitioner to reasonably describe the records sought in the request, and cited to FOIL exemptions Public Officers Law §§ 87 (2) (a), (b), (e), (f), (g) and 89 (2) (b). Petitioner was advised that he had four months to commence an article 78 proceeding to review respondents' determination. On November 26, 2013, petitioner filed the instant petition for relief pursuant to CPLR article 78. On April 2, 2014, respondents filed a cross motion to dismiss the petition pursuant to CPLR 7804 (f). Oral argument was held on June 24, 2014.

The purpose of FOIL, found in article 6 of the Public Officers Law, is to shed light on government decision-making, which in turn permits the electorate to make informed choices regarding governmental activities and facilitates exposure of waste, negligence and abuse. (*Matter of Encore Coll. Bookstores v Aux-*

*iliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 416 [1995].) Exemptions are narrowly construed and the agency seeking to prevent disclosure bears the burden of demonstrating that the requested material falls squarely within an exemption by articulating a particularized and specific justification for denying access. (*Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 74 AD3d 1417, 1418 [3d Dept 2010].)

When analyzing and deciding issues pertaining to FOIL exemptions patterned after the Federal FOIA, New York courts may look to federal case law for guidance. (*Hawkins v Kurlander*, 98 AD2d 14 [4th Dept 1983], citing *Matter of Fink v Lefkowitz*, 47 NY2d 567 [1979].) FOIL's "legislative history . . . indicates that many of its provisions . . . were patterned after the [f]ederal analogue. Accordingly, [f]ederal case law and legislative history . . . are instructive" when interpreting such provisions. (*Matter of Lesher v Hynes*, 19 NY3d 57, 64 [2012].) In *Matter of Pittari v Pirro* (258 AD2d 202 [2d Dept 1999]), the Appellate Division, Second Department employed the Supreme Court's analysis of FOIA exemption 7 (A) applied in *NLRB v Robbins Tire & Rubber Co.* (437 US 214 [1978]) when interpreting Public Officers Law § 87 (2) (e) (i). Notwithstanding the foregoing, federal case law should only be used as a guide when applicable. The Court of Appeals in *Encore Coll. Bookstores* (87 NY2d 410 [1995]) rejected using the federal courts' definition of "agency records" because federal case law constructed the definition of "agency records" from two federal statutes, and therefore the FOIA definition of "agency records" is far more restricted that the FOIL definition.

One significant difference between FOIL and FOIA is the ability to issue what is referred to as a *Glomar* response. A *Glomar* response may be asserted when an agency responding to a FOIA request refuses to confirm or deny the existence of the requested records if such confirmation or denial would cause harm cognizable under a FOIA exemption. (*Wilner v National Sec. Agency*, 592 F3d 60 [2d Cir 2009], citing *Gardels v Central Intelligence Agency*, 689 F2d 1100 [DC Cir 1982].) The *Glomar* response takes its name from the Hughes Glomar Explorer, a ship that was the subject of the FOIA request at issue in *Phillippi v Central Intelligence Agency* (546 F2d 1009 [DC Cir 1976]).

In order to invoke a *Glomar* response an agency must "tether" its refusal to one of nine FOIA exemptions. The burden is placed on the party resisting disclosure to demonstrate with

"reasonably specific" detail that the information being withheld logically falls within the claimed exemption. (*Wilner*, 592 F3d at 73; *Amnesty Intl. USA v Central Intelligence Agency*, 728 F Supp 2d 479 [SD NY 2010].) Agencies may invoke an exemption independently and courts may uphold agency action under one exemption without considering the applicability of the others. (*Larson v Department of State*, 565 F3d 857, 862 [DC Cir 2009].)

At issue in the instant petition are FOIL exemptions for records that fall within the following three categories: (i) Public Officers Law § 87 (2) (e) (i) records compiled for law enforcement purposes, which if disclosed, would interfere with law enforcement investigations; (ii) Public Officers Law § 87 (2) (e) (iv) records compiled for law enforcement purposes, which if disclosed, would reveal criminal investigative techniques or procedures; and (iii) Public Officers Law § 87 (2) (f) records, which if disclosed, could endanger the life or safety of a person. FOIA contains similar exemptions, found in 5 USC § 552 (b) (7) (exemption 7).

Federal FOIA's exemption 7 applies to records or information compiled for law enforcement purposes. (*National Day Laborer Org. Network v United States Immigration & Customs Enforcement Agency*, 811 F Supp 2d 713 [SD NY 2011].) "Courts have generally interpreted Exemption 7 as applying to records that pertain to specific investigations conducted by agencies, whether internal or external, and whether created or collected by the agency—in other words, investigatory files." (*Id.* at 744-745.) The government or agency bears the burden to demonstrate that a record is "compiled for law enforcement purposes" and that disclosure would effectuate one or more of the specified harms. (*John Doe Agency v John Doe Corp.*, 493 US 146 [1989].) Exemption 7 subdivisions (D), (E) and (F) are relevant to the instant case.

Exemption 7 (D) protects records that could reasonably be expected to disclose the identity of confidential sources, including a state, local or foreign agency or any private institution that furnished information on a confidential basis and any records compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation. (5 USC § 552 [b] [7] [D].) Agencies properly invoke exemption 7 (D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. (*Halpern v Federal Bur.*

*Investigations*, 181 F3d 279 [2d Cir 1999], citing *Department of Justice v Landano*, 508 US 165 [1993].)

Exemption 7 (E) allows nondisclosure when such records would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions and could reasonably be expected to risk circumvention of the law. (5 USC § 552 [b] [7] [E].)

And lastly, exemption 7 (F) prevents disclosure of records or information if such disclosure could reasonably be expected to endanger the life or physical safety of any individual. (5 USC § 552 [b] [7] [F].) Exemption 7 (F) has been invoked to protect individuals involved in law enforcement investigations and trials, as officials and as private citizens providing information and giving testimony. (*American Civ. Liberties Union v Department of Defense*, 389 F Supp 2d 547 [SD NY 2005].)

When establishing a *Glomar* response, agencies submit affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." (*Wilner*, 592 F3d at 73.) Conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not, standing alone, carry the agency's burden. (*Larson v Department of State*, 565 F3d 857 [DC Cir 2009].) On the issue of national security, courts must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record. (*Wolf v Central Intelligence Agency*, 473 F3d 370 [DC Cir 2007].) Although federal cases note that a court must accord "substantial weight" to the agency's affidavits, this court only looks to federal cases for guidance in interpreting the requirement and is not required to give the same substantial weight to the affidavits. (*See Davis v United States Dept. of Homeland Sec.*, 2013 WL 3288418, *5, 10, 2013 US Dist LEXIS 91386, *14, 33 [ED NY, June 27, 2013, No. 11-CV-203 (ARR)(VMS)].)

Respondents have invoked a *Glomar*-like response through the affidavit of Thomas Galati, Chief of the Intelligence Bureau for the New York City Police Department (NYPD), which tethers respondents' refusal to disclose the existence of responsive records to three FOIL exemptions. Respondents meet their burden to issue a *Glomar* response, set by the federal courts, by describing generic risks posed by disclosure, including under-

mining counterterrorism operations, compromising the intelligence capabilities of the NYPD, and disclosing sources of the information of the NYPD. (*See Asian Am. Legal Defense & Educ. Fund v New York City Police Dept.*, 41 Misc 3d 471, 476 [Sup Ct, NY County 2013].)

Respondents have demonstrated that petitioner is requesting records which may contain source revealing information that could potentially jeopardize the sources and methods used by the NYPD Intelligence Bureau. Through Chief Galati's affidavit, respondents claim that disclosing the existence of responsive records would reveal information concerning operations, methodologies, and sources of information of the NYPD, the resulting harm of which would allow individuals or groups to take countermeasures to avoid detection of illegal activity, undermining current and future NYPD investigations.

Finally, respondents have established that even acknowledging whether or not responsive records exist could impair the lives and safety of undercover officers and confidential informants. "The agency in question need only demonstrate 'a possibility of endanger[ment]' in order to invoke this exemption." (*Matter of Bellamy v New York City Police Dept.*, 87 AD3d 874, 875 [1st Dept 2011].) Accordingly, the response provided by respondents falls under the public safety exemption.

Nonetheless, neither the New York Court of Appeals nor the Appellate Divisions have ruled on the issue of whether a local agency, like the NYPD, has the ability to use the federally accepted *Glomar* response to a FOIL request. Furthermore, the federal precedent is clear that FOIA applies only to federal and not state agencies. (*Reed v Medford Fire Dept., Inc.*, 806 F Supp 2d 594, 607 [ED NY 2011], citing *Grand Cent. Partnership, Inc. v Cuomo*, 166 F3d 473 [2d Cir 1999].) Respondents are correct that FOIL is patterned after FOIA, but federal and New York state case law demonstrate that FOIA is not intended for state agencies. It should follow that when a local agency such as the NYPD is replying to a FOIL request, the *Glomar* doctrine is similarly inapplicable. Moreover, the Second Circuit "has explicitly stated that . . . it is beyond question that FOIA applies only to federal and not to state agencies." (*Reed v Medford Fire Dept.*, 806 F Supp 2d 594, 607 [2011] [internal quotation marks omitted], citing *Grand Cent. Partnership, Inc. v Cuomo*, 166 F3d 473 [1999].)

However, in a case of apparent first impression on these very narrow issues involving three FOIL exemptions applied to the

unique facts and circumstances of this article 78 proceeding, this court looks to the holdings of other jurisdictions for guidance since the current issues have never been squarely decided and, thus, there is no precedent to follow. Respondents have sufficiently demonstrated that applying the *Glomar* doctrine to petitioner's FOIL request is in keeping with the spirit of similar appellate court cases. Indeed, an examination of prior court rulings with parallels to the instant petition, combined with well-reasoned legal arguments put forth by respondents, lead this court to conclude that respondents' decision not to reveal whether documents responsive to petitioner's FOIL request exist should not be disturbed as it has a rational basis in the law.

Accordingly, it is hereby adjudged that petitioner's application for an order pursuant to CPLR article 78 is denied, without costs and disbursements to either party. The cross motion by respondents to dismiss the petition is granted.