Matter of Legal Aid Socy. v Records Access Officer (2025 NY Slip Op 00723)

Matter of Legal Aid Socy. v Records Access Officer

2025 NY Slip Op 00723

Decided on February 06, 2025

Appellate Division, First Department

Moulton, J.P. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 06, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
David Friedman Manuel Mendez Martin Shulman Julio Rodriguez III

Index No. 156967/21 Appeal No. 2973 Case No. 2024-00034 

[*1]In the Matter of the Legal Aid Society, Petitioner-Respondent,
v
Records Access Officer, New York City Police Department, Respondent-Appellant.

Respondent appeals from a judgment (denominated an order) of the Supreme Court, New York County (Lyle E. Frank, J.), entered October 27, 2023, granting a petition to produce records under the Freedom of Information Law (FOIL) (Public Officers Law §§ 84-90) to the extent of directing respondent New York City Police Department to make best efforts to produce responsive records, beginning on or before March 31, 2024, and continuing every three months thereafter, along with a status update to petitioner of compliance with the FOIL request.

Muriel Goode-Trufant, Corporation Counsel, New York (MacKenzie Fillow, Rebecca L. Visgaitis and Elina Druker of counsel), for appellant.
Orrick, Herrington & Sutcliffe LLP, New York (Duncan Hosie of the bar of the State of California, admitted pro hac vice, and Christopher J. Cariello, of counsel), and Twyla Carter, The Legal Aid Society, New York (Jerome D. Greco of counsel), for respondent.

MOULTON, J.P. 

To promote open government and public accountability, the Freedom of Information Law (FOIL) imposes a broad duty on government agencies to make their records available to the public (see Public Officers Law § 84). The statute is based on the policy that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). "All records are presumptively available for public inspection and copying, unless the agency satisfies its burden of demonstrating that the material [sought] falls squarely within one of the exemptions" specified in FOIL (Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 225 [2018] [internal quotation marks omitted]). An agency may not rely on conclusory assertions to avoid its obligations under FOIL (see Matter of Jewish Press, Inc. v New York City Dept. of Investigation, 193 AD3d 461, 462 [1st Dept 2021]). Supreme Court held that the New York City Police Department (NYPD) has failed to carry its burden in this case. We now affirm.
Between 2007 and 2020, the NYPD procured an array of technology and surveillance products and services, including facial recognition software and cellphone tracking tools, using special expense purchase (SPEX) contracts. SPEX contracts are confidential agreements secured outside standard open-source procurement procedures. It is not disputed that the NYPD used the SPEX process to avoid the transparency of open-source procurement. The NPYD determined that open-source procurement would undermine the effectiveness of the new surveillance technologies, and that the technologies would be more effective if kept secret from the public. The SPEX process was authorized through a memorandum of understanding originally executed in March 2007 by the City's Comptroller and various other City agencies.
On July 15, 2020, the City Council enacted the Public Oversight of Surveillance Technology (POST) Act, which "requires the reporting and evaluation of surveillance [*2]technologies used by the NYPD" (New York City Council, Legislative Research Ctr., Int 0487-2018, available at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3343878&GUID=996ABB2A-9F4C-4A32-B081-D6F24AB954A0).
The POST Act defines "surveillance technology" as follows: "The term 'surveillance technology' means equipment, software, or systems capable of, or used or designed for, collecting, retaining, processing, or sharing audio, video, location, thermal, biometric, or similar information, that is operated by or at the direction of the department."
The POST Act required the NYPD "to issue a surveillance impact and use policy about these technologies" (id.). This public document was to include comprehensive descriptions of the surveillance technologies that fall within the POST Act, including the capabilities of the technologies, the entities outside the NYPD that have access to the technologies, and the various procedures used by the NYPD to protect access to the information generated by the technologies.
Starting in April 2021, the NYPD published its Final Surveillance and Use Policy on its website in a series of policy papers (currently numbering 37) broken down by technology, such as facial recognition, iris recognition, and mobile x-ray technology, to name a few. The NYPD has updated these policy papers from time to time. As required by the POST Act, the NYPD Inspector General released a public report concerning the NYPD's surveillance technology policies in November 2022. The City Comptroller terminated the SPEX program effective August 27, 2020.
In a FOIL request dated October 29, 2020, the Legal Aid Society sought "[a]ny and all documents relating to" the NYPD's use of confidential SPEX contracts between 2007 and 2020. The letter contained a list of specific types of documents. This list corresponded with a list of specified contract documents that the NYPD was required to maintain as part of a 2010 agreement with the Comptroller.
Despite this specific enumeration of documents in the FOIL request, mirroring the document categories specified in the NYPD's 2010 agreement with the Comptroller, the NYPD denied the FOIL request on the ground that the request "did not reasonably describe a record in a manner that would enable a search to be conducted." The NYPD's response contained no other ground for the denial. The vacuousness of this denial was later further demonstrated when it became clear that the NYPD kept SPEX contract documents in hard copy form in a designated space at its offices. Because the NYPD wanted to keep the contract documents secret, they were not digitized and access to them was restricted. Therefore, the universe of responsive SPEX documents was segregated and kept in a single location, which would appear to facilitate a search.
Legal Aid filed an administrative appeal. In a letter dated April 5, 2021, the NYPD denied the appeal, again stating that the request "does not reasonably describe a record in [*3]a manner that could enable a search." The denial also offered a second reason: that the number of records sought would mean that a response would be unreasonably burdensome, and would tax the limited resources of the NYPD. The denial of the appeal did not invoke any other FOIL exemption. This article 78 proceeding followed.
After denying the NYPD's pre-answer motion to dismiss the petition, Supreme Court held a hearing at which the NYPD offered a single witness: Kevin Murtagh, the agency attorney at NYPD who oversaw the SPEX program, and who is most familiar with the relevant contract documents. Murtagh testified that these documents filled approximately 60 banker's boxes. The parties agree that there are approximately 165,000 pages of SPEX documents, all in hard copy.[FN1] Murtagh testified that many of the documents would require redactions for the protection of personal information and trade secrets, and to ensure public safety, and that only he and one other colleague would have the expertise necessary to review the records and approve redactions. Even if they were to bring other NYPD reviewers on board, Murtagh testified, he and his colleague would need to review their work. Murtagh further testified that an outside vendor could not be deployed because of the sensitive nature of the contract documents.
Supreme Court credited Murtagh's testimony that the documents within the ambit of petitioner's FOIL request were voluminous, but found that he had not sufficiently explained why the production would "take years" and could not be conducted within a reasonable amount of time. Supreme Court ordered that the NYPD provide a rolling production every quarter and provide status updates on its compliance. The NYPD appealed.
In order to deny disclosure, the NYPD had the burden to show that the requested information "falls squarely within a FOIL exception by articulating a particularized and specific justification for denying access" (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462-463 [2007] [quoting Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]).
On appeal the NYPD has abandoned its argument that petitioner's FOIL request does not reasonably describe the documents sought. The NYPD relies solely on the burdensomeness provision of Public Officers Law § 89(3)(a), which provides in relevant part:
"An agency shall not deny a request on the basis that the request is voluminous or that locating or reviewing the requested records or providing the requested copies is burdensome because the agency lacks sufficient staffing or on any other basis if the agency may engage an outside professional service to provide copying, programming or other services required to provide the copy. . . ." (see Matter of Jewish Press v New York City Police Department, 205 AD3d 613, 613-614 [1st Dept 2022]).
In its two administrative denials, the Police Department did not cite the FOIL exemptions for personal privacy (Public Officers Law[*4]§§ 87[2][b], 89[2]), non-routine criminal investigative techniques or procedures (Public Officers Law § 87[2][e][iv]), or trade secrets or proprietary information (Public Officers Law § 87[2][d]). While the better practice would have been to explicitly invoke any applicable exemption during the administrative process, the NYPD's burdensomeness claim contains within it the alleged need to redact the documents based on FOIL's exemptions for personal privacy, nonroutine criminal investigative techniques or procedures, and trade secrets or proprietary information. The NYPD did not invoke these exemptions in its denials, but throughout this proceeding it has argued that it would be burdensome to produce the records because of the need to scrub them of information within the ambit of these exemptions. Even considering these exemptions, the NYPD failed to show that the redactions required by them would cause the production to be unduly burdensome.
An overarching problem with the NYPD's evidence of burdensomeness, which consisted entirely of Murtagh's testimony, is that it is nonspecific. To begin, Murtagh did not set forth the number of SPEX Contracts that are encompassed by the request. He also did not set out an approximate number of pages that contain potentially exempt information.
Crucially, the NYPD made no effort to contend with the seismic shift caused by the POST Act. Murtagh made only passing mention of the public disclosures required by the POST Act and made no attempt to explain how those disclosures might affect the NYPD's claim of exemption. Because of the POST Act, the contracts in question no longer describe technologies hidden from the public. These technologies have been described by the NYPD itself in its published Final Surveillance and Use Policy. Thus, the NYPD failed to demonstrate, or even approximate, the portion of the documents that would fall within the exemption for nonroutine criminal investigative techniques or procedures (Public Officers Law § 87[2][e][iv]).
Murtagh testified that it might be necessary to scrub the names and other identifying information of contract signatories, but he otherwise failed to describe the type and approximate number of redactions pursuant to the exemptions for personal privacy (Public Officers Law §§ 87[2][b], 89[2]). Whose personal information besides the contract signatories' would need to be redacted? Were there specific individuals identified in the contracts that would assist the NYPD in installing and running the technology purchased during the SPEX program? We do not know. In articulating the need for redactions, Murtagh could identify such people by job responsibilities without giving their names or other personally identifying information.
Finally, Murtagh testified that some of the contracts themselves contained nondisclosure provisions. There is no evidence concerning the breadth of those provisions. Murtagh did not testify if such provisions bar any disclosure of the contract[*5], or only of certain specified trade secrets within the contract. Again, the lack of specificity makes it impossible to determine the difficulty and extent of redaction.
The NYPD's assertion of the burdensomeness exemption also rests on the necessity of reviewing approximately 165,000 pages of hard-copy documents. While this is a considerable task, it is eased by Supreme Court's determination that the production could go forward quarterly, on a rolling basis. Additionally, the review is facilitated by the fact that the relevant documents are all in one place, and there is no need to search the NYPD's precincts and departments. While Murtagh stated that only he and one colleague were qualified to review this universe of documents, he failed to explain why other NYPD employees could not be trained to do so. Finally, Public Officers Law § 89(3)(a) provides that an agency may use an "outside professional service to provide copying, programming or other services required to provide the copy." Murtagh stated that the documents are too sensitive to be shown to an outside contractor. Again, he did not grapple with the POST Act's effect on the documents' sensitivity. Assuming that some portions of the contract documents fall within FOIL's exemptions, Murtagh did not explain why a nondisclosure agreement would be insufficient to protect the exempt portions of the documents.
Other courts have rejected arguments predicated on burdensomeness for significantly more voluminous records. In a recent Third Department case, Matter of New York Civ. Liberties Union v New York State Police (228 AD3d 1162 [3d Dept 2024]), the respondent state police appealed a Supreme Court order requiring disclosure of 20 years of personnel disciplinary records previously shielded by Civil Rights Law § 50-a (see New York Civ. Liberties Union v New York State Police, 2023 NY Slip Op 32079[U] [Sup Ct, Albany County 2023]). According to the state police, reviewing all "complaints" would have entailed reviewing files 6,100 personnel files and 440,000 pages of documents (Brief for Respondent-Appellant, 2023 WL 11158106, *8-9, *17 n 7). The state police speculated that review by a single full-time reviewer would take more than 22 years to complete and cost almost $2 million (id. at *17-18). To accommodate this task, Supreme Court permitted the state police to release appropriately redacted various of the complaints on a rolling basis (New York Civ. Liberties Union, 2023 NY Slip Op 32079[U], at *14).
The Third Department upheld Supreme Court's order (New York Civ. Liberties Union, 228 AD3d at 1169). On the issue of undue burden, the Court explained that the state police's "arguments [were] predicated on the volume of review and the overall effect on its resources. However, 'an agency may not evade the broad disclosure provisions of FOIL by merely asserting that compliance could potentially require the review of a large volume of records'" (id. at 1167, quoting Matter of Puig v New York State [*6]Police, 212 AD3d 1025, 1027 [3d Dept 2023]). "[T]he time-consuming process entailed by disclosing records that ha[d] been, in most respects, completely shielded for nearly 50 years d[id] not provide justification for indefinitely foreclosing disclosure based solely on the volume of the request" (id. at 1168). Even strained resources, eased by pending requests for some of the same documents and improved scanning procedures, could not obscure the "new reality of disclosure obligations for law enforcement agencies prompted by the repeal of Civil Rights Law § 50-a" (id. at 1169).
Similarly, in this case the NYPD is seeking to "indefinitely foreclose[] disclosure" by invoking the "volume" of Legal Aid's request (id. at 1168). However, the NYPD's conclusory and imprecise evidence failed to demonstrate burdensomeness within the meaning of Public Officers Law § 89(3)(a).
Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Lyle E. Frank, J.), entered October 27, 2023, granting the petition to produce records under FOIL (Public Officers Law §§ 84-90) to the extent of directing respondent New York City Police Department to make best efforts to produce responsive records, beginning on or before March 31, 2024, and continuing every three months thereafter, along with a status update of compliance with the FOIL request to petitioner, should be affirmed, without costs.
Judgment (denominated an order), Supreme Court, New York County (Lyle E. Frank, J.), entered October 27, 2023, affirmed, without costs.
Opinion by Moulton, J. All concur.
Moulton, J.P., Friedman, Mendez, Shulman, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 6, 2025

Footnotes

Footnote 1: According to Murtagh, the documents include emails. It is unclear from the parties' papers how this digital form of communication was preserved by the NYPD.