[968 NE2d 451, 945 NYS2d 214]

In the Matter of MICHAEL LESHER, Appellant, v CHARLES J. HYNES, as District Attorney of Kings County, New York, et al., Respondents.

Argued February 14, 2012; decided April 3, 2012

58

**POINTS OF COUNSEL**

*Michael Lesher*, Passaic, New Jersey, appellant pro se. I. The Freedom of Information Law exemption asserted by the District Attorney, and upheld by the Appellate Division, is contrary to law. (*Matter of Moore v Santucci*, 151 AD2d 677; *Matter of Gould*

*v New York City Police Dept.*, 89 NY2d 267; *Matter of Hanig v State of N.Y. Dept. of Motor Vehs.*, 79 NY2d 106; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Verizon N.Y., Inc. v Mills*, 60 AD3d 958; *Pittari v Pirro*, 179 Misc 2d 241; *Matter of Legal Aid Socy. v New York City Police Dept.*, 274 AD2d 207.) II. The Appellate Division wrongly applied the terms of Civil Rights Law § 50-b in defiance of all existing precedent. (*Matter of Fappiano v New York City Police Dept.*, 95 NY2d 738; *Doyen v McMahon*, 306 AD2d 708; *Matter of Karlin v McMahon*, 96 NY2d 842.) III. The Appellate Division misread the facts and posture of this case. (*Chase Manhattan Bank v Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005*, 287 AD2d 303; *Thoreson v Penthouse Intl.*, 80 NY2d 490.) IV. Affirmance of the Appellate Division's opinion would frustrate the purpose of the Freedom of Information Law.

*Charles J. Hynes, District Attorney*, Brooklyn (*Morgan J. Dennehy, Leonard Joblove* and *Jodi L. Mandel* of counsel), for respondents. The denial of access to the documents that the appellant requested pursuant to the Freedom of Information Law was correct; all of the documents were exempt from disclosure because they were part of an ongoing prosecution, and most of the documents were exempt because they tended to identify the victims of sex offenses. (*Matter of Heintz v Brown*, 80 NY2d 998; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Legal Aid Socy. v New York City Police Dept.*, 274 AD2d 207; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Pittari v Pirro*, 258 AD2d 202; *Matter of Terry D.*, 81 NY2d 1042; *People v Gissendanner*, 48 NY2d 543; *NLRB v Robbins Tire & Rubber Co.*, 437 US 214; *Title Guar. Co. v National Labor Relations Bd.*, 534 F2d 484, 429 US 834; *Matter of Fappiano v New York City Police Dept.*, 95 NY2d 738.)

*New York Civil Liberties Union Foundation*, New York City (*Christopher Dunn, Corey Stoughton* and *Daniel Mullkoff* of counsel), for New York Civil Liberties Union, amicus curiae. I. This Court should reverse the Appellate Division and hold that respondents were obligated to use redaction to the extent feasible rather than withholding responsive records in their entirety. (*Matter of Karlin v McMahon*, 96 NY2d 842; *Matter of Short v Board of Mgrs. of Nassau County Med. Ctr.*, 57 NY2d 399; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131; *Matter of Gould v New York City Police Dept.*, 89 NY2d

267; *Matter of Daily Gazette Co. v City of Schenectady*, 93 NY2d 145; *Matter of Data Tree, LLC v Romaine*, 9 NY3d 454; *Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 18 NY3d 42.) II. The Court should require agencies invoking the law enforcement exemption to demonstrate a particularized and specific factual basis for concluding that the release of records would actually interfere with ongoing investigations or judicial proceedings. (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *Matter of Gould v New York City Police Dept.*, 89 NY2d 267; *Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477; *NLRB v Robbins Tire & Rubber Co.*, 437 US 214; *Title Guar. Co. v National Labor Relations Bd.*, 534 F2d 484; *Matter of Legal Aid Socy. v New York City Police Dept.*, 274 AD2d 207; *Matter of Pittari v Pirro*, 258 AD2d 202; *Medellín v Texas*, 552 US 491.) III. The Court should also reverse the Appellate Division for failure to require a particularized and specific justification for respondents' invocation of Civil Rights Law § 50-b.

## OPINION OF THE COURT

READ, J.

In 1984, a Kings County grand jury handed down an indictment charging Avrohom Mondrowitz with multiple counts of sexual abuse involving young boys. But he had already fled from the United States to Israel, one step ahead of an arrest warrant. Attempts to extradite Mondrowitz foundered early on, apparently because differences in Israeli and New York law prevented his return under the extradition treaty then in force between the United States and Israel.

At some point, petitioner Michael Lesher, an attorney and author, became interested in the Mondrowitz case. On August 4, 1998, he made a request to the District Attorney of Kings County pursuant to New York's Freedom of Information Law (FOIL) (Public Officers Law § 84 *et seq.*) for documents relating to Mondrowitz. The District Attorney furnished material in response, including police reports, statements edited to remove the names of alleged victims and witnesses and some correspondence with federal agencies.

On October 17, 2007, nearly a decade later, Lesher made a second FOIL request to the District Attorney in which he sought

"[a]ny and all records, files, notes, correspondence, memoranda or other documents pertinent in any way to the matter *State v. Mondrowitz*, Indictment No. 7693/84 and pertaining to the time period from September 1, 1993 to the present date, including but not limited to any correspondence between the D.A.'s office and the Department of Justice, the Department of State or any other branch of the United States government."

After considerable delay, the FOIL records access officer denied Lesher's request on December 23, 2008, invoking Public Officers Law § 87 (2) (e) (i)-(iv), the law enforcement exemption, because the records sought "pertain[ed] to an open case in that a bench warrant was issued on 02/21/1985." In particular, she relied on section 87 (2) (e) (i), which allows an agency to "deny access to records or portions thereof that . . . are compiled for law enforcement purposes and which, if disclosed, would . . . interfere with law enforcement investigations or judicial proceedings." Lesher took an administrative appeal of this denial, which the FOIL appeals officer upheld in a letter dated January 29, 2009. She stated that "because the documents [sought were] relevant to an ongoing prosecution, . . . disclosure at this time would interfere with the prosecution."

Lesher apparently argued in his administrative appeal that Public Officers Law § 87 (2) (e) (i) was inapplicable to his 2007 FOIL request because in 1998 the District Attorney had furnished several documents associated with the Mondrowitz case. The FOIL appeals officer replied that in 1998, though,

"the prosecution against Mr. Mondrowitz, although open and pending, was not actually active due to the fact that we were unable to extradite Mr. Mondrowitz from Israel because the extradition treaty in force at the time between Israel and the United States did not cover Mr. Mondrowitz's crimes. However, the new extradition treaty, which went into effect in January, 2007, and now includes Mr. Mondrowitz's crimes, makes extradition a possibility. Thus, the prosecution of Mr. Mondrowitz is now viable, and, therefore, the above-cited FOIL exemption [i.e., Public Officers Law § 87 (2) (e) (i)] is fully applicable."

By verified petition sworn to May 26, 2009, Lesher commenced this CPLR article 78 proceeding to compel the District

Attorney and the FOIL appeals officer to comply with his records request. In his petition, Lesher alleged that the District Attorney resumed efforts to extradite Mondrowitz in October 2007, and

> "Mondrowitz was arrested in Israel the next month, November 2007, and has been incarcerated . . . since then awaiting extradition. His extradition was ordered by the Government of Israel, which order was affirmed by a District Court in Jerusalem. The decision of Israel's Supreme Court on Mondrowitz's appeal of his extradition order is still awaited."

He insisted that it was "extremely unlikely" that "investigatory documents" had been added to the Mondrowitz case file after September 1993, the beginning of the time period addressed by his FOIL request. He further urged that there was "no 'judicial proceeding' against Mondrowitz . . . in progress" except in Israel; and that the District Attorney had not explained how the release of "documents, including correspondence, pertaining to the renewed extradition request conveyed to Israel in October 2007" interfered with law enforcement investigations or judicial proceedings.

The FOIL appeals officer countered in an affirmation dated June 18, 2009 that Lesher was "wrong" to claim that the District Attorney was not entitled to rely upon Public Officers Law § 87 (2) (e) (i) to deny access to the requested documents. She cited *Matter of Pittari v Pirro* (258 AD2d 202 [2d Dept 1999], *lv denied* 94 NY2d 755 [1999] [where a criminal proceeding is pending, documents are exempt under Public Officers Law § 87 (2) (e) (i) upon "generic determination" that disclosure of categories of records would create broad risks of harm; a document-by-document showing of interference is not required]) and *Matter of Legal Aid Socy. v New York City Police Dept.* (274 AD2d 207 [1st Dept 2000], *lv denied* 95 NY2d 956 [2000] [same]) for the proposition that the "mere fact" that documents were compiled in furtherance of an ongoing criminal prosecution was a sufficiently particularized explanation to justify denial of access, and "that an agency need not advance an explanation as to how the disclosure of each document . . . would interfere with that prosecution or investigation." Lesher in his reply affidavit sworn to June 22, 2009 alleged that there was a difference between prosecution and extradition, and the "specific focus" of his FOIL request was "correspondence, memoranda or other documents relating to communications between the District

Attorney and the federal government, regarding the *extradition* of Avrohom Mondrowitz."

In a judgment entered November 23, 2009, Supreme Court granted the petition "to the extent only of directing [disclosure] of all correspondence, memoranda or other documents between the Office of the District Attorney and agencies or departments of the federal government" regarding Mondrowitz's extradition. Relying on *Pittari* and *Legal Aid Society*, the judge reasoned that a claim that disclosure would interfere with a pending criminal prosecution was sufficiently particularized to justify denying a FOIL request under Public Officers Law § 87 (2) (e) (i), but that the "correspondence and communications between the District Attorney and federal agencies . . . being sought" were not likewise exempt because "[t]hose records allegedly pertain[ed] to Mondrowitz's extradition."

On December 21, 2009, the District Attorney moved to reargue. He informed Supreme Court that the records compiled in connection with Mondrowitz's prosecution filled roughly four boxes, and that nearly half of the documents in those boxes comprised

> "correspondence between the District Attorney's Office and the United States Department of State in which the District Attorney's Office provided detailed information about Mondrowitz's crimes so that the State Department could prepare extradition requests. The correspondence consists of crime summaries, timelines of when and where each crime occurred, witness names and personal information, and witness statements."

The District Attorney maintained that this correspondence was necessarily "related to the ongoing prosecution because [it] involve[d] the efforts made to return Mondrowitz to the jurisdiction so that the prosecution [might] proceed"; and that "disclosure of the documents surely would interfere with the prosecution . . . because they [were] replete with information about the crimes committed." Supreme Court denied the motion to reargue on April 28, 2010, and the District Attorney took an appeal.

On January 11, 2011, the Appellate Division unanimously reversed and dismissed the petition (80 AD3d 611 [2d Dept 2011]). The court concluded that the District Attorney had established that the materials requested by Lesher were covered in their

entirety by Public Officers Law § 87 (2) (e) (i). This was so because "[c]ontrary to [Lesher's] contention," the District Attorney was "not required to detail the manner in which each document sought would cause such interference. Rather, . . . the assertion that disclosure would interfere with an ongoing law enforcement investigation was a sufficiently particularized justification" under the circumstances (*id.* at 613).[1] We subsequently granted Lesher permission to appeal (16 NY3d 710 [2011]), and now affirm.

Lesher emphasizes that Supreme Court only ordered the District Attorney to disclose correspondence and communications related to Mondrowitz's extradition. In his view, such documents are not part of the criminal prosecution, "cannot possibly compromise a criminal prosecution" and so are not exempt from disclosure under Public Officers Law § 87 (2) (e) (i). In short, he argues that FOIL does not permit an agency to deny access to an "extradition-related" record compiled during the course of a criminal prosecution absent an explanation as to how the *particular* document's release would undermine ongoing or future investigatory or judicial proceedings.

FOIL's "legislative history . . . indicates that many of its provisions . . . were patterned after the Federal analogue. Accordingly, Federal case law and legislative history . . . are instructive" when interpreting such provisions (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 572 n [1979] [citations omitted]). Notably, the law enforcement exemption is modeled on 5 USC § 552 (b) (7). As originally enacted by Congress, this provision of the Freedom of Information Act (FOIA) (5 USC § 552) exempted from disclosure "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." Similarly, the law enforcement exemption, as originally enacted in FOIL in 1974, shielded "information that is . . . part of investigatory files compiled for law enforcement purposes" (Public Officers Law former § 88 [7] [d]).

Congress rewrote FOIA's law enforcement exemption in 1974 to permit the nondisclosure of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would" create one of six specified

---

1. In his brief to the Appellate Division, the District Attorney stated that after Supreme Court's decision, "an Israeli appeals court" overturned Mondrowitz's extradition order, but that "the prosecution remain[ed] viable" because the United States Departments of Justice and State were still considering whether to pursue further action with the Israeli government.

dangers, the first of which was to "interfere with enforcement proceedings" (*see* 5 USC § 552 [b] [7] [A]) (Exemption 7A).[2] When the Legislature amended FOIL in 1977, it followed suit by enacting Public Officers Law § 87 (2) (e) (i), which, as previously noted, denies access to records "compiled for law enforcement purposes and which, if disclosed, would . . . interfere with law enforcement investigations or judicial proceedings."

As the Supreme Court explained in *NLRB v Robbins Tire & Rubber Co.* (437 US 214, 228-229 [1978]), Congress adopted Exemption 7A to register its disapproval of decisions handed down by the Circuit Court of Appeals for the District of Columbia in 1973 and 1974, which interpreted FOIA's original law enforcement exemption too broadly for Congress's taste. These decisions withheld material from disclosure so long as it was kept in an investigatory file compiled for law enforcement purposes, without regard to the nature of the documents or the status of the investigation. For example, in *Aspin v Department of Defense* (491 F2d 24, 30 [1973]), the D.C. Circuit held that the content of investigatory files remained exempt from disclosure even "after the termination of investigation and enforcement proceedings." The court reasoned that legislative history did not "compel a contrary view"; "if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired"; "[f]ew persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings"; and "the investigative techniques of the investigating body would be disclosed to the general public" (*id.*). "Thus, the thrust of congressional concern" when it enacted Exemption 7A "was to make clear that [FOIA's law enforcement exemption] did not endlessly protect material simply because it was in an investigatory file" (*Robbins*, 437 US at 230); and "that by extending blanket protection to anything labeled an investigatory file, the D.C. Circuit had ignored Congress' original intent" (*id.* at 235; *see also Title Guar. Co. v National Labor Relations Bd.*, 534 F2d 484, 492 [2d Cir 1976], *cert denied* 429 US 834 [1976] ["The cases that Exemption 7(A)

---

2. In 1986, Congress amended FOIA's law enforcement exemption to substitute "could reasonably be expected" for "would" (*see Department of Justice v Reporters Comm. for Freedom of Press*, 489 US 749, 777-778 n 22 [1989]).

was intended to overrule were for the most part closed investigative file cases"]).

In light of this legislative history, the Court in *Robbins* considered whether the National Labor Relations Board (NLRB or the Board) was required to produce copies of witness statements requested by an employer pursuant to FOIA. At argument in the District Court, the NLRB contended that the statements were exempt from disclosure because their production would interfere with a pending enforcement proceeding—in this case, a hearing on an unfair labor practice complaint lodged against the employer. The District Court held that Exemption 7A did not apply because "the Board did not claim that release of the documents at issue would pose any unique or unusual danger of interference with [the] particular enforcement proceeding" (*id.* at 217). On appeal, the United States Court of Appeals for the Fifth Circuit concluded generally "that Exemption 7(A) was to be available only where there was a specific evidentiary showing of the possibility of actual interference in an individual case," which it accurately concluded the NLRB had not demonstrated (*id.* at 218).

The Supreme Court reversed. The Court ruled that Exemption 7A applied to the entire category of statements of witnesses whom the NLRB intended to call at the hearing, noting that Exemption 7A "[spoke] in the plural voice" about "enforcement proceedings" and therefore Congress "appear[ed] to contemplate that certain generic determinations might be made" (*id.* at 223-224). As the Court explained,

> "While the Court of Appeals was correct that the amendment of [FOIA's original law enforcement exemption] was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes, we think it erred in concluding that no generic determinations of likely interference can ever be made. We conclude that Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a

case is pending would generally 'interfere with enforcement proceedings' " (*id.* at 236).[3]

The Court then determined that the Board had met its burden of demonstrating that disclosure of witness statements would interfere with enforcement proceedings. The NLRB accomplished this by pointing out that disclosure threatened to undermine its discovery procedures, delay adjudication of the unfair labor practice and heighten the danger of witness intimidation.

The Appellate Division in *Pittari* and *Legal Aid Society* adopted the *Robbins* analysis when interpreting Public Officers Law § 87 (2) (e) (i), as do we. A criminal prosecution is a "particular kind[ ] of enforcement proceeding[ ]" where "disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings' " (*Robbins*, 437 US at 236). We emphasize that this does not mean that every document in a law enforcement agency's criminal case file is automatically exempt from disclosure simply because kept there. The agency must identify the generic kinds of documents for which the exemption is claimed, and the generic risks posed by disclosure of these categories of documents. Put slightly differently, the agency must still fulfill its burden under Public Officers Law § 89 (4) (b) to articulate a factual basis for the exemption.

■ Here, the District Attorney sustained this burden. First, he identified for Supreme Court the categories of records that he sought to withhold on the basis of the exemption—i.e., correspondence with the United States Department of State "consist-[ing] of crime summaries, timelines of when and where each crime occurred, witness names and personal information, and witness statements." Next, he identified the generic harm that disclosure would cause—i.e., disclosure would necessarily interfere with law enforcement proceedings because the correspondence was "replete with information about the crimes committed," and so its release posed an obvious risk of prematurely

---

3. Justice Stevens in a concurring opinion observed that the majority's "rationale applie[d] equally to any enforcement proceeding" (437 US at 243). Justice Powell, in partial dissent, endorsed the Court's approach, agreeing that "the congressional requirement of a specific showing of harm does not prevent determinations of likely harm with respect to prehearing release of particular categories of documents" (*id.* at 249). He simply disagreed with the definition of the category, which he would have limited to statements of witnesses currently employed by the employer.

tipping the District Attorney's hand. Finally, there is no doubt that law enforcement proceedings were ongoing when Lesher commenced this CPLR article 78 proceeding. Indeed, at that time there was every reason to believe that Mondrowitz would soon be returned to Brooklyn for trial. Lesher himself declared in his petition that Mondrowitz was incarcerated in Israel, awaiting extradition.

Of course, Public Officers Law § 87 (2) (e) (i) ceases to apply after enforcement investigations and any ensuing judicial proceedings have run their course. Thus, the exemption does not bar disclosure of records compiled for law enforcement purposes in a criminal matter where the prosecution has been completed, absent some unusual circumstance such as the prospect that disclosure might compromise a related case. And criminal cases are typically wound up within a reasonable time after a crime is committed. At the other end of the spectrum, though, are "cold cases" where an investigation remains open, perhaps for a very long time, once probative leads have been exhausted. Similarly, where a suspect flees the jurisdiction the potential to prosecute remains, although an eventual trial might be uncertain of occurrence or timing. But this case of a fugitive from justice may now effectively be over.

Both parties have referred in their papers to a decision handed down by the Supreme Court of Israel in early 2010, after the record closed in Supreme Court. Lesher intimates that this decision brings to an end any realistic possibility that Mondrowitz will ever be extradited from Israel to stand trial for the crimes alleged in the indictment. Of course, Mondrowitz might always in theory return to Brooklyn voluntarily or relocate or travel to another nation from which extradition is possible, but such a happening is speculative and improbable.

Thus, Lesher is free to make another FOIL request for the correspondence and communications that he sought in this proceeding, based on the intervening Israeli judicial decision. If he is correct in his assessment of the decision's effect—a matter for the FOIL records access officer to consider in the first instance—there is, practically speaking, no longer any pending or potential law enforcement investigation or judicial proceeding with which disclosure might interfere. Public Officers Law § 87 (2) (e) (i) would not preclude release of the records.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.