Matter of Disability Rights N.Y. v New York State Commn. of Corr. (2021 NY Slip Op 03098)





Matter of Disability Rights N.Y. v New York State Commn. of Corr.


2021 NY Slip Op 03098


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

531599
[*1]In the Matter of Disability Rights New York, Appellant,
v
New York State Commission of Correction, Respondent.

Calendar Date:March 11, 2021

Before:Garry, P.J., Egan Jr., Clark, Aarons and Reynolds Fitzgerald, JJ.

Disability Rights New York, Albany (Teresa Caturano of counsel), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the Supreme Court (Ceresia, J.), entered January 24, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioner's Freedom of Information Law request.
Petitioner is a not-for-profit organization authorized to protect and advocate for the rights of individuals with disabilities in New York. Respondent is a state agency responsible for, as relevant here, investigating and reviewing inmate deaths in state, county and local correctional facilities (see Correction Law art 3). In January 2019, petitioner submitted a request to respondent under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]), seeking the production of all completed "Facility Medical Director Report of Inmate Death" forms (hereinafter
M-187 forms) from January 1, 2018 through December 31, 2018 for county jails and local correctional facilities in 12 counties within the state, subject to certain redactions.[FN1] In February 2019, respondent's records access officer replied, indicating that, for four of the relevant counties, respondent maintained no documents responsive to petitioner's request. For the remaining eight counties, the records access officer indicated that the responsive documents were not subject to disclosure because they were attached to respondent's ongoing investigations of inmate deaths (see Public Officers Law § 87 [2] [e]). Petitioner administratively appealed and respondent's general counsel affirmed, holding that the requested documents were compiled for law enforcement purposes and were exempt from disclosure under Public Officers Law § 87 (2) (e) because they pertain to ongoing investigations.
Petitioner thereafter commenced this CPLR article 78 proceeding seeking to compel production of the requested documents or, in the alternative, for Supreme Court to conduct an in camera review of same (see Public Officers Law § 89 [4] [b]). Following an in camera review of the requested documents, Supreme Court denied petitioner's request and dismissed the petition, finding that respondent articulated a particularized and specific reason for denying access to the relevant M-187 forms and that, even with redactions, public release of the requested records would frustrate and interfere with pending investigations and potential future judicial proceedings. Petitioner appeals.
"FOIL generally requires government agencies to make available for public inspection and copying all records subject to a number of exemptions" (Matter of Suhr v New York State Dept. of Civ. Serv., 193 AD3d 129, 131 [2021] [internal quotation marks and citations omitted]; see Public Officers Law § 84). In turn, "the agency relying on the applicability of a FOIL exemption has the burden of establishing that the [requested] documents qualify for the exemption and, to meet that burden, the agency must articulate [a] particularized and [*2]specific justification for denying disclosure" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 74 [2017] [internal quotation marks, brackets, ellipses and citations omitted]; see Public Officers Law §§ 87 [2]; 89 [4] [b]; Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 225-226 [2018]).
As relevant here, where an agency relies on FOIL's law enforcement exemption as the justification for denying disclosure of records, the reviewing court is required to evaluate "(1) whether the records were compiled for law enforcement purposes; and (2) whether disclosure of the records would interfere with law enforcement investigations or judicial proceedings" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d at 75; see Public Officers Law § 87 [2] [e] [i]; Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 225-226). Statutory exemptions are to be narrowly interpreted (see Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]) and must "be given their natural and obvious meaning where such interpretation is consistent with the legislative intent and with the general purpose and manifest policy underlying FOIL" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 225 [internal quotation marks and citations omitted]). When interpreting the applicability of the law enforcement exception, the Court of Appeals has emphasized that "'the purpose of [FOIL] is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that information to construct a defense to impede a prosecution'" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d at 77, quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 572 [1979]). "Rather, the agency may fulfill its burden to articulate a factual basis for the exemption under FOIL by 'identify[ing] the generic kinds of documents for which the exemption is claimed, and the generic risks posed by disclosure of [those] categories of documents'" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 226, quoting Matter of Lesher v Hynes, 19 NY3d 57, 67 [2012]).
In support of the applicability of the law enforcement exemption, respondent submitted the affirmation of Brian Callahan, its general counsel. Callahan outlined respondent's relevant statutory and regulatory functions and duties (see generally Correction Law art 3), which include, as relevant here, the duty to, through the work of the correction medical review board, investigate and review the cause and circumstances of any inmate deaths within a correctional facility (see Correction Law § 47 [1] [a]). In that regard, following an inmate's death, a facility's medical director is tasked with, among other things, submitting an M-187 form to respondent that includes a clinical summary of the inmate's medical and mental history, a description of the events that preceded the inmate's death and the names and titles of facility staff that were involved in the inmate's [*3]treatment and care (see 9 NYCRR 7022.2 [a] [5]; 7022.4 [e]). This information is gathered along with other pertinent information with regard to the inmate's death — e.g., toxicology reports, medical and mental health treatment records, security videos, facility investigative reports, etc. — and then a report is generated and submitted to respondent with, if applicable, appropriate recommendations (see Correction Law § 47).
Respondent also has the corresponding authority to commence judicial enforcement actions to ensure that a correctional facility complies with applicable laws regarding management of the facility and/or the care, treatment and discipline of inmates (see Correction Law § 46 [4]). Therefore, the inherent purpose of providing respondent with this authority to investigate and review the cause and circumstances surrounding any inmate's death is to "ferret[] out . . . improper and potentially illegal" conduct by correctional facility staff, as well as to, among other things, make recommendations to prevent the recurrence of such deaths and improve the quality and availability of inmate medical care (Matter of Madeiros v New York State Educ. Dept., 30 NY3d at 76). Accordingly, to the extent that M-187 forms provide the initial factual report with respect to an inmate's death and, in essence, trigger the investigatory process, we conclude that such records are compiled for law enforcement purposes (see Public Officers Law § 87 [2] [e] [i]; Matter of Madeiros v New York State Educ. Dept., 30 NY3d at 76-77).
Turning to the second prong of the analysis, we agree with Supreme Court that premature disclosure of the M-187 forms would interfere with law enforcement investigations and/or potential judicial proceedings. Callahan explained that an M-187 form is the primary medical record drafted upon an inmate's death and contains the first substantive information that respondent receives regarding the events surrounding an inmate's death and provides the initial information from which the substantive investigation is commenced. These M-187 forms are then "used during the interview of pertinent correctional and health care staff to refresh recollections, clarify factual ambiguities, and question potentially deficient, negligent or criminal actions by public servants." According to Callahan, each M-187 form corresponds to the investigation of an inmate death, and respondent withholds M-187 forms from disclosure pending completion of its investigation because the premature releasing of them prior thereto would frustrate respondent's investigations by tipping its hand with respect to the subject and nature of its investigations and allow "the subjects to construct excuses or defenses."
Contrary to petitioner's assertion, in order to meet its burden, respondent was "not required to make a specific evidentiary showing relating to the likelihood that disclosure of records would pose any unique or unusual danger of interference in the individual [*4]case that is the subject of the request" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 226). Rather, since Callahan's affidavit raised bona fide law enforcement concerns — of which he has personal knowledge as respondent's counsel — regarding the necessity of withholding disclosure of the M-187 forms pending conclusion of respondent's inmate death investigations given the generic harms that would flow from premature disclosure thereof, an adequate factual basis for applicability of the exemption was provided (see Public Officers Law § 89 [4] [b]; Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 226; Matter of Lesher v Hynes, 19 NY3d at 67-68).
Additionally, temporarily shielding these M-187 forms from disclosure while respondent's inmate death investigations are pending does not constitute an improper blanket exemption, as respondent provided the requisite factual basis indicating why nondisclosure is necessary under the circumstances (see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 235-236; Matter of Lesher v Hynes, 19 NY3d at 67-68). Simply put, petitioner cannot escape the fact that its FOIL requests seek disclosure of forms that, by their very nature, involve the underlying investigatory facts which, if prematurely disclosed, could tip off the subjects thereof and interfere with ongoing law enforcement investigations such that they necessarily "implicate the core concerns underlying the law enforcement and public safety exemptions" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 235; see Matter of Lesher v Hynes, 19 NY3d at 66-67). That is not to say that every document that respondent maintains with respect to an ongoing inmate death investigation is automatically shielded from disclosure; however, here, the M-187 forms that petitioner has requested are the only documents presently before us for review. In that regard, petitioner has not provided any evidence of bad faith by respondent in withholding disclosure of these forms given its assertion that it would prematurely tip its hand if it provided these documents to the potential targets of its investigations (see Matter of Lesher v Hynes, 19 NY3d at 67-68).[FN2] Thus, in order to give effect to the purpose and effect of the law enforcement exemption, Supreme Court properly dismissed the petition. Given our holding, petitioner has not established its entitlement to counsel fees (see Public Officers Law § 89 [4] [c] [ii]). To the extent not specifically addressed, petitioner's remaining arguments have been reviewed and found to be lacking merit.
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: In a prior matter involving the parties, they entered into a stipulation regarding the relevant redactions with respect to M-187 forms.

Footnote 2: Notably, at oral argument, respondent represented that six of the eight inmate death investigations for which petitioner has sought disclosure of the corresponding M-187 forms have since concluded during the pendency of this appeal and that said forms are now subject to disclosure.