Matter of Sarkodie v Kings County Dist. Attorney (2024 NY Slip Op 00908)

Matter of Sarkodie v Kings County Dist. Attorney

2024 NY Slip Op 00908

Decided on February 21, 2024

Appellate Division, Second Department

Wan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 21, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
LILLIAN WAN
JANICE A. TAYLOR, JJ.

2021-07834
 (Index No. 503224/21)

[*1]In the Matter of Justin Sarkodie, appellant, 
v
Kings County District Attorney, respondent.

APPEAL by the petitioner, in a proceeding pursuant to CPLR article 78 to compel the production of certain records pursuant to the Freedom of Information Law (Public Officers Law art 6), from a judgment of the Supreme Court (Francois A. Rivera, J.) dated September 20, 2021, and entered in Kings County. The judgment, in effect, denied the petition and dismissed the proceeding.

Justin C. Bonus, Forest Hills, NY, for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Morgan J. Dennehy of counsel), respondent pro se.

WAN, J.

OPINION & ORDER
I.
The petitioner was convicted, under Kings County Indictment No. 2544/13, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree. On February 11, 2015, upon his convictions, he was sentenced to an aggregate indeterminate term of imprisonment of 25 years to life. On direct appeal from the judgment of conviction, this Court modified the judgment by reducing the sentence imposed on the conviction of murder in the second degree to an indeterminate term of imprisonment of 20 years to life, and otherwise affirmed (see People v Sarkodie, 172 AD3d 909, 910). On October 15, 2019, the Court of Appeals denied leave to appeal (see People v Sarkodie, 34 NY3d 984), and the petitioner did not seek a writ of certiorari from the Supreme Court of the United States.
On July 12, 2020, the petitioner made a request to the Kings County District Attorney (hereinafter the District Attorney), pursuant to the Freedom of Information Law (Public Officers Law art 6; hereinafter FOIL), for "any and all material" related to the matter of People v Sarkodie, Indictment No. 2544/13, "including, but not limited to, any and all recordings, whether video or audio, DD-5's, medical reports, witness statements, police memo books, crime scene investigative reports, evidence vouchers, and ballistics reports." On October 15, 2020, while the FOIL request remained pending, the petitioner, pro se, filed a habeas corpus petition in the United States District Court for the Eastern District of New York (hereinafter the EDNY). Thereafter, on December 13, 2020, the petitioner's counsel filed a second habeas corpus petition in the EDNY, which was consolidated with the petitioner's pro se habeas petition (hereinafter the federal habeas proceeding). In the federal habeas proceeding, the petitioner alleged both exhausted and unexhausted state law claims.
By order dated December 23, 2020 (hereinafter the stay-and-abeyance order), the EDNY acknowledged that the federal habeas proceeding "contains unexhausted claims that are not plainly meritless." Accordingly, the EDNY "f[ound] a stay to be appropriate and h[eld] the Petition [*2]in abeyance" to allow the petitioner to "exhaust his unexhausted claims and perfect the petition, subject to (1) Petitioner initiating proceedings in the state court within 30 days of the date of this order; and (2) Petitioner filing an Amended Petition within 30 days after exhaustion is completed." The EDNY directed the petitioner to "file a letter by January 22, 2021, advising the Court that state-court proceedings have commenced," and to file a status report "[e]very 90 days thereafter." The EDNY further instructed that "[i]f any of the conditions of this stay are not satisfied, the stay shall be vacated nunc pro tunc, as of the date of this order, and the Petition may be dismissed."
On December 29, 2020, the District Attorney's FOIL Records Access Officer denied the petitioner's FOIL request, determining that "the requested records are exempt from disclosure pursuant to Public Officers Law § 87(2)(e)(i)." The FOIL Records Access Officer determined that disclosure of records while the federal habeas proceeding was pending "would interfere with the handling of the judicial proceedings as well as with any further investigation that might be necessary." By letter dated January 1, 2021, the petitioner's counsel submitted an administrative appeal of the determination to the District Attorney's FOIL Appeals Officer. On January 19, 2021, the District Attorney's FOIL Appeals Officer affirmed the determination of the FOIL Records Access Officer.
On February 10, 2021, the petitioner commenced this CPLR article 78 proceeding to compel the production of the requested records. In a judgment dated September 20, 2021, the Supreme Court, in effect, denied the petition and dismissed the proceeding, concluding that the District Attorney properly determined that the records at issue were exempt from disclosure pursuant to Public Officers Law § 87(2)(e)(i). The petitioner appeals.
II.
"In order to promote open government and public accountability, FOIL imposes a broad duty on government to make its records available to the public" (Matter of Tuckahoe Common Sch. Dist. v Town of Southampton, 179 AD3d 929, 930). "'All government records are thus presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87(2)'" (id. at 930, quoting Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275). "Consistent with the policy of broad public access, the exemptions are to be narrowly construed, and the burden rests on the agency to demonstrate that the requested material qualifies for exemption" (Matter of Newsday, LLC v Nassau County Police Dept., 222 AD3d 85, 89; see Matter of Luongo v Records Access Officer, 161 AD3d 1079, 1080). Therefore, "an agency claiming an exemption from disclosure has the burden of 'demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access'" (Matter of Luongo v Records Access Officer, 161 AD3d at 1080, quoting Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566; see Matter of Gannett Satellite Info. Network, Inc. v County of Putnam, 142 AD3d 1012, 1017). As such, "[t]he standard of review in a CPLR article 78 proceeding challenging an agency's denial of a FOIL request is much more stringent than the lenient standard generally applicable to CPLR article 78 review of agency actions" (Matter of Luongo v Records Access Officer, 161 AD3d at 1080). Additionally, "because FOIL has made full disclosure by public agencies a public right, the status or need of the person seeking access is generally of no consequence in construing FOIL and its exemptions" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566-567).
Pursuant to Public Officers Law § 87(2)(e)(i), an agency "may deny access to records or portions thereof" where the requested records were "compiled for law enforcement purposes" and, if disclosed, "would . . . interfere with law enforcement investigations or judicial proceedings." Notably, the phrase "interfere with law enforcement investigations or judicial proceedings" is not further defined by statute, and the legislative history of FOIL is silent as to the intent behind the exemption contained in Public Officers Law § 87(2)(e)(i) (see L 1977, ch 933). At the same time, the Court of Appeals has recognized that FOIL's legislative history "'indicates that many of its provisions . . . were patterned after the [f]ederal analogue,'" the Freedom of Information Act (5 USC § 552; hereinafter FOIA), and thus, "'[f]ederal case law and legislative history . . . are instructive'" on the meaning and intent of the provisions contained in FOIL (Matter of Lesher v Hynes, 19 NY3d 57, 64, quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 572 n). Thus, in Matter of Lesher v Hynes, the Court of Appeals, in considering the burden upon the agency invoking the exemption contained in Public Officers Law § 87(2)(e)(i), relied upon NLRB v Robbins Tire & Rubber Co. (437 US 214), in which the Supreme Court of the United States considered the scope of "FOIA's law [*3]enforcement exemption," the federal analogue of Public Officers Law § 87(2)(e)(i) (Matter of Lesher v Hynes, 19 NY3d at 64-65). Upon consideration, the Court of Appeals determined that an agency seeking to invoke the exemption contained in Public Officers Law § 87(2)(e)(i) "must still fulfill its burden under Public Officers Law § 89(4)(b) to articulate a factual basis for the exemption," but indicated that the agency need only "identify the generic kinds of documents for which the exemption is claimed, and the generic risks posed by disclosure of these categories of documents" (Matter of Lesher v Hynes, 19 NY3d at 67; see Matter of Pittari v Pirro, 258 AD2d 202, 205-207). Thus, the Court of Appeals determined that the respondent agency had properly invoked the exemption contained in Public Officers Law § 87(2)(e)(i) where the agency made a particularized and specific showing that the underlying criminal investigation remained open and was actively being pursued by the agency, and therefore, any disclosure of documents related to that investigation would necessarily interfere with it (see Matter of Lesher v Hynes, 19 NY3d at 60-61, 67-68).
More recently, this Court determined that the phrase "interfere with . . . judicial proceedings" applied where the petitioner made a FOIL request for documents related to his underlying criminal case during the pendency of his appeal from the judgment of conviction (see Matter of Crowe v Guccione, 171 AD3d 1170, 1171-1172). Additionally, in Matter of Xao He Lu v Kings County Dist. Attorney (217 AD3d 959), where the petitioner "had made a particularized FOIL request," this Court determined that "the [District Attorney] demonstrated a valid basis for denial of [that] request" by "demonstrat[ing] the risk associated with disclosure of the requested records, in that such disclosure would interfere with the petitioner's co-defendant's pending habeas corpus proceeding" (id. at 960). The Appellate Division, First Department, has also determined that where a petitioner's federal habeas proceeding remained pending, the respondent agency "correctly determined that disclosure of the requested documents would have interfered with petitioner's then-pending criminal appeal and any subsequent proceedings in the underlying criminal case" (Matter of Whitley v New York County Dist. Attorney's Off., 101 AD3d 455, 455; see Matter of Whitley v New York County Dist. Attorney's Off., 2011 NY Slip Op 32444[U], *1 [Sup Ct, NY County], affd 101 AD3d 455).
Here, however, since the EDNY instituted a stay and abeyance of the federal habeas proceeding, this Court confronts a matter of first impression for the courts of this State, to wit: whether, given the stay-and-abeyance order in the federal habeas proceeding, the petitioner's FOIL request would interfere with that judicial proceeding. For the reasons that follow, we hold that the stay-and-abeyance order establishes that the petitioner's FOIL request would not interfere with the federal habeas proceeding.
III.
Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court" (28 USC § 2244[d][1]). As applicable here, "[t]he limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (id. § 2244[d][1][A]). "The time for appeal or application for a writ of certiorari to review the judgment of a State court in a criminal case shall be as prescribed by the rules of the Supreme Court" (id. § 2101[d]). According to Rule 13(1) of the Rules of the Supreme Court of the United States, "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk [of the Supreme Court] within 90 days after entry of the order denying discretionary review." Here, for purposes of AEDPA, the petitioner's judgment became final on January 13, 2020, which was 90 days after October 15, 2019, the date on which the Court of Appeals denied his motion for leave to appeal, since the petitioner did not seek a writ of certiorari from the Supreme Court of the United States (see 28 USC § 2101[d]; Ross v Artuz, 150 F3d 97, 98 [2d Cir]). As such, the petitioner was required to commence a federal habeas proceeding on or before January 13, 2021 (see 28 USC § 2244[d][1][A]). Notably, the petitions filed in the federal habeas proceeding constituted mixed petitions alleging both exhausted and unexhausted state law claims.
In Rhines v Weber (544 US 269), the Supreme Court of the United States addressed whether a federal district court, in light of the enactment of the one-year statute of limitations imposed by AEDPA on federal habeas petitions, has discretion to stay a "mixed petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not" (id. at 271 [internal [*4]quotation marks omitted]). The Court acknowledged that pre-AEDPA, although there was no statute of limitations for federal habeas petitions, the Court's decision in Rose v Lundy (455 US 509, 522) imposed a "total exhaustion" requirement and directed federal courts to effectuate that requirement by dismissing mixed habeas petitions without prejudice and allowing petitioners to return to present the unexhausted claims to a state court in the first instance. However, "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims" (Rhines v Weber, 544 US at 275). In addressing this issue, the Court noted that some district courts had adopted different versions of a "stay-and-abeyance" procedure whereby,
"rather than dismiss the mixed petition pursuant to Lundy, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court" (id. at 275-276 [internal quotation marks omitted]).
Accordingly, the Supreme Court of the United States endorsed stay and abeyance, but noted that it should be available only in limited circumstances. According to the Court, "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless" (id. at 277). The Court cautioned that a "mixed petition should not be stayed indefinitely" and, therefore, "district courts should place reasonable time limits on a petitioner's trip to state court and back" (id. at 277-278). In this respect, the Court cited Zarvela v Artuz (254 F3d 374, 381 [2d Cir]), in which the United States Court of Appeals for the Second Circuit held that
"when a district court, confronted with a mixed petition, elects to stay the petition, it should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed."
In Zarvela, the Second Circuit also recognized that after a habeas petitioner had exhausted a claim in state court, the petitioner, "like any civil litigant, is entitled to amend his petition" to include previously unexhausted claims (id. at 382).
IV.
Here, in issuing the stay-and-abeyance order, the EDNY followed the stay-and-abeyance procedure set forth in Rhines v Weber and Zarvela v Artuz. In the stay-and-abeyance order, the EDNY, citing Rhines and Zarvela, determined that the petitioner's federal habeas proceeding "contains unexhausted claims that are not plainly meritless," "f[ound] a stay to be appropriate and h[eld] the Petition in abeyance" to allow the petitioner to "exhaust his unexhausted claims and perfect the petition, subject to (1) Petitioner initiating proceedings in the state court within 30 days of the date of this order; and (2) Petitioner filing an Amended Petition within 30 days after exhaustion is completed." In other words, the EDNY acknowledged that the petitioner had sought to exhaust his state court remedies in accordance with the stay-and-abeyance order, and allowed the federal habeas proceeding to be held in abeyance pending the outcome of those state court proceedings.
Therefore, given the unique circumstances imposed by the one-year statute of limitations contained within AEDPA and the stay-and-abeyance jurisprudence of the Supreme Court of the United States, the petitioner's FOIL request would not interfere with the federal habeas proceeding. The actions taken by the petitioner (i.e., the filing of a mixed habeas petition to comply with the one-year statute of limitations in AEDPA) and the EDNY (i.e., the stay and abeyance of the federal habeas proceeding) constituted known and acceptable practices within the federal court system intended to pause adjudication of the federal habeas proceeding. Moreover, the District Attorney, who is listed as representing the respondent in the federal habeas proceeding, cannot be [*5]said to be unfamiliar with this common federal habeas practice.
This case is distinguishable from this Court's recent determination in Matter of Xao He Lu v Kings County Dist. Attorney (217 AD3d 959) and the First Department's determination in Matter of Whitley v New York County Dist. Attorney's Off. (101 AD3d 455). In both cases, a federal habeas proceeding relating to the underlying criminal investigation and prosecution was actively being litigated, and thus, the subject FOIL requests' interference with those active proceedings is readily apparent (see Matter of Xao He Lu v Kings County Dist. Attorney, 217 AD3d at 960; Matter of Whitley v New York County Dist. Attorney's Off., 101 AD3d at 455; Matter of Whitley v New York County Dist. Attorney's Off., 2011 NY Slip Op 32444[U], *3-4). Here, though, unlike in Matter of Xao He Lu and Matter of Whitley, the stay-and-abeyance order provides a mechanism to ensure that the FOIL request will not interfere with the federal habeas proceeding. That order expressly provides for a pause in the federal habeas proceeding while the petitioner exhausts his unexhausted state law claims in state court and allows for the resumption of active litigation in the federal habeas proceeding so long as the petitioner files an amended habeas petition "within 30 days after exhaustion is completed." At the same time, the failure to satisfy "any of the conditions" of the stay-and-abeyance order, including filing an amended petition within the 30-day time frame upon exhaustion of state law claims, "shall" result in vacatur of the stay, and the federal habeas proceeding "may be dismissed." Given that the petitioner must proceed in the federal habeas proceeding pursuant to these directives, which comply with the directives laid out by the Supreme Court of the United States in Rhines v Weber (544 US 269) and the Second Circuit in Zarvela v Artuz (254 F3d 374), the stay-and-abeyance order alleviates any possibility that the FOIL request will interfere with the federal habeas proceeding, either at present or in the future.[FN1]
For similar reasons, this case is distinguishable from Matter of Lesher v Hynes (19 NY3d 57), since the petitioner's judgment of conviction is final, and there is no ongoing law enforcement investigation by the District Attorney into the petitioner. This case is also distinguishable from Matter of Pittari v Pirro (258 AD2d 202), in which this Court determined that a "defendant in a pending criminal proceeding" could not seek disclosure of records compiled for law enforcement purposes pertaining to his arrest and prosecution, since such disclosure while a criminal proceeding was being actively litigated would "interfere with the adjudication of the criminal proceeding" (id. at 207). This Court concluded that under such circumstances, disclosure could interfere with the orderly process of disclosure set forth in Criminal Procedure Law article 240, and would create a substantial likelihood of delay of the criminal proceeding generated by administrative appeals of the denial of disclosure (see Matter of Pittari v Pirro, 258 AD2d at 206-207).
Here, however, none of the concerns annunciated in Matter of Pittari v Pirro are present, since the petitioner's criminal proceeding has terminated and his judgment of conviction has become final. Moreover, even if this CPLR article 78 proceeding might delay the ultimate resolution of the federal habeas proceeding, such delay is expressly contemplated by the stay-and-abeyance [*6]procedure approved by the Supreme Court of the United States in Rhines v Weber and applied by the EDNY in the stay-and-abeyance order.
To the extent that the First Department held in Matter of Whitley that the "[r]espondents correctly determined that disclosure of the requested documents would have interfered with petitioner's then-pending criminal appeal and any subsequent proceedings in the underlying criminal case" (Matter of Whitley v New York County Dist. Attorney's Off., 101 AD3d at 455 [emphasis added]), we conclude that this constitutes too expansive a view of the exemption contained in Public Officers Law § 87(2)(e)(i), which must be construed narrowly (see Matter of Luongo v Records Access Officer, 161 AD3d at 1080; Matter of Ortiz v Zugibe, 144 AD3d 919, 920). Under such a view, the exemption could conceivably be used to justify denial of any FOIL request by any member of the public for documents pertaining to any criminal investigation, since a defendant might potentially make a motion pursuant to Criminal Procedure Law § 440.10(1) to vacate a judgment of conviction "[a]t any time after the entry of [such] a judgment." Such a view cannot be reconciled with the purpose and intent of FOIL, which seeks "to promote open government and public accountability" and "imposes a broad duty on government to make its records available to the public" (Matter of Tuckahoe Common Sch. Dist. v Town of Southampton, 179 AD3d at 930).
Accordingly, the District Attorney failed to establish that the records sought were exempt from disclosure pursuant to Public Officers Law § 87(2)(e)(i), since the District Attorney failed to establish that disclosure would interfere with the pending federal habeas proceeding (see Rhines v Weber, 544 US at 275-277; Zarvela v Artuz, 254 F3d at 381-382; cf. Matter of Xao He Lu v Kings County Dist. Attorney, 217 AD3d at 960; Matter of Whitley v New York County Dist. Attorney's Off., 101 AD3d at 455).
V.
In light of our determination, we need not reach the petitioner's remaining contentions.
Accordingly, the Supreme Court should have granted the petition to compel the production of the records sought in the petitioner's July 12, 2020 FOIL request.
The judgment is reversed, on the law, and the petition is granted.
DUFFY, J.P., WOOTEN and TAYLOR, JJ., concur.
ORDERED that the judgment is reversed, on the law, with costs, and the petition is granted.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court

Footnotes

Footnote 1:We acknowledge that the stay-and-abeyance order does not expressly indicate that the commencement of a CPLR article 78 proceeding is included in its directive that the petitioner "initiat[e] proceedings in the state court within 30 days of the date of this order." However, we note that on January 22, 2021, shortly after the FOIL Appeals Officer affirmed the denial of the petitioner's FOIL request, the petitioner's counsel asked the EDNY to direct the District Attorney to provide the records sought in the FOIL request or, "minimally, [the petitioner]'s cell phone extraction and video surveillance," and to continue the stay. By order dated January 25, 2021, the EDNY denied the request, noting that the proper forum for such a discovery request is state court. However, the EDNY modified the stay-and-abeyance order to the following extent: "Accordingly, Petitioner shall have thirty (30) days from the date of this Order in which Petitioner must commence state court proceedings, by either filing a post-conviction motion or filing an appeal of the denial of the FOIL request," citing Public Officers Law § 89(4)(b) (emphasis added). The EDNY otherwise continued the stay. Although this amended stay-and-abeyance order was not available at the time the FOIL Appeals Officer affirmed the denial of the FOIL request and, therefore, falls outside of the administrative record made before the agency (see Matter of Montalbano v Silva, 204 AD2d 457, 458), it confirms that the EDNY considered the petitioner's FOIL request as part of the process by which the petitioner was working to exhaust his unexhausted state law claims.